# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BORDELON MARINE, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1106** |
| **BIBBY SUBSEA ROV, LLC** | **SECTION I** |

## ORDER AND REASONS

Although the Court previously granted an unopposed motion to stay and administratively close this matter while the parties arbitrate their claims, the Court now has two motions pending before it: (1) a "motion to re-open case to enforce the method of appointment of arbitrators"[1] filed by plaintiff, Bordelon Marine, LLC ("Bordelon"), and (2) a "cross-motion to confirm arbitrability of matter"[2] filed by defendant, Bibby Subsea ROV, LLC ("Bibby"). The Court has received substantial briefing opposing both motions.[3] For the following reasons, Bordelon's motion is denied and Bibby's motion is granted as set forth herein.

## BACKGROUND AND PROCEDURAL HISTORY

**A.    Procedural History**

For the purposes of resolving these motions, it is sufficient to note that Bordelon and Bibby entered into two charter agreements with respect to two vessels: the M/V SHELIA BORDELON and the M/V BRANDON BORDELON.[4] Bordelon filed a lawsuit against Bibby in state court

---

[1] R. Doc. No. 12.
[2] R. Doc. No. 15.
[3] R. Doc. Nos. 14, 18, 21, 25, 26.
[4] *See* R. Doc. No. 1. The parties' briefing is inconsistent with respect to the spelling of the M/V SHELIA BORDELON; the Court will utilize the spelling in the charter agreement.

1

implicating both charters,[5] which lawsuit Bibby removed to this Court on February 5, 2016.[6] Concurrent with the notice of removal, Bibby filed a motion to stay this case pending arbitration.[7] Bordelon filed no opposition and the Court granted the motion which stayed this matter pending arbitration. This Court permitted leave for any party to "file a written motion to re-open the above-captioned case within thirty days after final resolution of the arbitration proceeding."[8]

On April 11, 2016, Bordelon filed a motion to reopen the case, contending that Bibby violated the charter agreement provisions governing arbitrator selection. The Court will summarize the material facts and contractual language which are undisputed in all respects material to the resolution of these motions.

**B.  The Applicable Contractual Language Regarding Arbitration**

Both charter agreements contain identical provisions, which the parties refer to as Clause 34, which govern mandatory arbitration and voluntary mediation:

> 34. BIMCO Dispute Resolution Clause
> . . . .
> (b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and **any dispute arising out of or in connection with this Charter Party shall be referred to three persons at ~~New York~~, Texas, one to be appointed by each of the parties hereto, and the third by the two so chosen**; their decision or that of any two of

---

[5]The state court petition refers specifically to the charter for the SHELIA BORDELON and more obliquely to a different "contract in relation to property owned by [Bordelon]." R. Doc. No. 1-1, at 3. In briefing, Bibby asserts that this statement refers to the charter for the BRANDON BORDELON, R. Doc. No. 15-1, at 2, and Bordelon does not dispute that the "property owned by [BORDELON]" is the BRANDON BORDELON. R. Doc. No. 18, at 5-6. Furthermore, Bordelon has come before the Court requesting that the Court enforce the arbitration agreement in the BRANDON BORDELON charter; accordingly, the Court finds no material dispute that the two contracts involved in this matter are the two charters for the two vessels.
[6]R. Doc. No. 1.
[7]R. Doc. No. 4.
[8]R. Doc. No. 11.

>them shall be final, and for the purposes of enforcing any award, judgement [sic] may be entered on an award by any court of competent jurisdiction. **The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. ["SMA".]** To the extent that Maritime law of the United States does not apply, this Charter Party shall be governed by the laws of the State of Texas.
>
>. . . .
>
>Notwithstanding (a), (b), or (c) above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Charter Party.
>
>In the case of a dispute in respect of which arbitration has been commenced under (a), (b), or (c) above, the following shall apply:
>
>>(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.
>>
>>(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator [sic] within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.
>>
>>(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.[9]

Clause 34 does not specify a time frame for either party to appoint arbitrators.

The SMA Maritime Arbitration Rules referred to in the charters state that "[w]herever parties have agreed to arbitration under the Rules of the Society of Maritime Arbitrators, Inc., these Rules . . . shall be binding on the parties and constitute an integral part of that agreement."[10] Furthermore, Section 10 of the SMA Rules states as follows regarding the selection of arbitrators:

---

[9] R. Doc. No. 4-3, at 18; R. Doc. No. 4-4, at 24 (emphasis added).

[10] R. Doc. No. 12-5, at 1. There is no dispute regarding the content of the SMA Rules.

3

Section 10. Direct Appointment by Parties

If the arbitration agreement specifies a method by which Arbitrators are to be appointed, that method shall be followed and in the event of a conflict, its terms shall prevail over this section of the Rules.

. . . .

If a party fails to appoint its Arbitrator within the time frame specified in the arbitration agreement, the party demanding arbitration may resort to Section 5 of the Act.

**If no such time frame is specified, the party demanding the arbitration shall give the other written notice that the appointment of its Arbitrator is made pursuant to Section 10 of these Rules which requires the other to appoint an arbitrator within twenty days of receipt of that notice, failing which the party demanding arbitration may appoint a second Arbitrator with the same force and effect as if that second Arbitrator were appointed by the other party.** Any thus chosen second Arbitrator shall be a disinterested person with the same qualifications, if any, required by the arbitration agreement. If the arbitration agreement provides for three Arbitrators, the two so chosen shall appoint the third.[11]

The motions implicate the interaction of Clause 34 of the charters and Section 10 of the SMA Rules.

**C.    The Selection of Arbitrators**

On February 5, 2016 (the same day that this matter was removed and the motion to stay pending arbitration was filed), counsel for Bibby emailed two letters[12] to counsel for Bordelon, one letter with respect to the M/V BRANDON BORDELON and the other with respect to the M/V SHELIA BORDELON. Each letter contained an identical arbitration demand, designated Bibby's arbitrator, and "call[ed] upon Bordelon to appoint an arbitrator in accordance with the terms of the Charter and the SMA Rules":

. . . . Bibby hereby demands arbitration in respect of Bordelon's claims for alleged breach and/or wrongful termination of the Charter, as well as any other claims between the parties arising out of or in connection with the Charter, and hereby notifies Bordelon that it has appointed James Patrick Cooney as arbitrator.

---

[11]R. Doc. No. 12-5, at 5 (emphasis added).

[12]The exhibits reflect that the letters were sent via email. *E.g.*, R. Doc. No. 12-6, at 1. Accordingly, the Court will use the terms "letters" and "emails" interchangeably to refer to this correspondence.

4

. . . .
We hereby call upon Bordelon to appoint an arbitrator in accordance with the terms of the Charter and the SMA Rules.[13]

On February 24, 2016, counsel for Bordelon sent a letter entitled "Mediation Notice" to counsel for Bibby, "formally request[ing] that Bibby mediate the dispute between the parties" pursuant to Clause 34(d) of the Charters.[14]

The parties have spilled much ink regarding the existence, contents, and significance of a February 25, 2016 email from counsel for Bibby to counsel for Bordelon. Because Bordelon's motion should be denied regardless of the circumstances under which it received that February 25 email, and because Bibby has not moved for sanctions based on counsel for Bordelon's representations regarding that email, the Court declines to delve into this factual morass.[15]

On March 10, 2016, counsel for Bibby sent an email to counsel for Bordelon declining mediation and stating the following regarding Bordelon's failure to designate an arbitrator:[16]

> In the meantime, Bordelon has ignored Bibby's demand to arbitrate Bordelon's claims and has refused to appoint an arbitrator in this matter, thereby forcing Bibby to make a motion to stay the litigation pending arbitration. We now understand that Bordelon does not oppose Bibby's motion, thereby conceding its claims are subject to arbitration under the relevant charter parties. Nevertheless, to date Bordelon has still failed to appoint an arbitrator.[17]

On March 22, 2016, counsel for Bordelon sent an email to counsel for Bibby apparently

---

[13] R. Doc. No. 12-6, at 1-4.
[14] R. Doc. No. 12-6, at 5-6.
[15] Nonetheless, it is abundantly clear that the email was sent and that it "remind[ed] Bordelon that its arbitrator appointment must be made in each matter by February 25, 2016 in accordance with Section 10 of the SMA Rules, failing which Bibby shall make the appointment on Bordelon's behalf." R. Doc. No. 14-1, at 80. Through no fault of Bibby, the email was inexplicably caught in Bordelon's counsel's spam filter. *See* R. Doc. No. 26.
[16] R. Doc. No. 12-6, at 7.
[17] R. Doc. No. 12-6, at 7.

5

disputing whether the matter should be arbitrated.[18] In this March 22 letter, Bordelon did not designate an arbitrator.

On April 1, 2016, 56 days after the initial arbitration demand, counsel for Bibby sent an email to counsel for Bordelon stating that:

> By email dated February 25, 2016 we wrote to you in relevant part as follows:
>
>> In the meantime, however, we take this opportunity to *remind* Bordelon that its arbitrator appointment must be made in each matter by February 25, 2016 in accordance Section 10 of the SMA Rules, failing which Bibby shall make the appointment on Bordelon's behalf.
>
> To date Bordelon has failed to appoint an arbitrator in this matter, notwithstanding that its deadline to do so has now long passed. Accordingly, in accordance with Section 10 of the SMA Rules, Bibby hereby notifies Bordelon that it has appointed Stephen Stapleton as arbitrator.[19]

On April 4, 2016, counsel for Bordelon sent an email to counsel for Bibby, disputing Bibby's appointment of the second arbitrator and purporting to appoint Bordelon's arbitrator.[20] The two arbitrators selected by Bibby subsequently selected a third arbitrator to serve as chairman of the arbitration panel.[21] However, the record does not reflect any action taken by that arbitration panel.

## LAW AND ANALYSIS

### A.    Bordelon's Motion to Re-Open and to Enforce Method for Appointment of Arbitrators

Bordelon challenges Bibby's selection of a second arbitrator following Bordelon's purported

---

[18] R. Doc. No. 12-6, at 9.
[19] R. Doc. No. 12-6, at 15, 17 (emphasis added).
[20] R. Doc. No. 12-6, at 18-19. Bibby responded on April 6, 2016, but that letter is not material to resolution of these motions.
[21] R. Doc. No. 12-6, at 24.

failure to timely do so. As briefed by the parties, the motion raises three issues. First, Bibby raises a threshold issue of whether the Court may decide Bordelon's motion or whether the issue of the selection of the arbitrators must itself be referred to arbitration. Second, if the Court can decide the issue, the parties dispute how their arbitration agreement should be interpreted with respect to appointment of arbitrators. Third, if the arbitration agreement potentially allows Bibby to appoint the second arbitrator, Bordelon disputes whether Bibby gave proper notice before doing so.

**1.)     Whether the Court or the Arbitration Panel Should Decide This Issue**

As a threshold matter, Bibby contends that Bordelon's challenge to the appointment of arbitrators must be referred to the arbitration panel "because it is a procedural issue that the arbitrator must decide."[22] Bordelon disagrees and contends that because the parties have deadlocked regarding the selection of arbitrators, the Court may intervene.[23]

Neither party has cited a decision directly on point. On the one hand, as Bordelon points out, "as part of the 'very limited' jurisdiction granted to the courts under the [Federal Arbitration Act] to intervene in the arbitral process before an award, 9 U.S.C. § 5 authorizes a court to intervene 'to select an arbitrator upon application of a party,' in three instances:"

> (1) if the arbitration agreement does not provide a method for selecting arbitrators;
> (2) if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method; or (3) if there is a lapse in the naming of an arbitrator or arbitrators.

*BP Exploration Libya, Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 490-91 (5th Cir. 2012).[24] As

---

[22] R. Doc. No. 14, at 11.
[23] R. Doc. No. 21, at 1-3.
[24] *BP Exploration* defined a "lapse" as "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." *Id.* at 492 (internal quotation marks omitted).

7

an example of this "very limited jurisdiction," the Fifth Circuit favorably cited *Stop & Shop Supermarket Co. v. United Food & Commercial Workers Union Local 342*, 246 F. App'x 7, 11 (2d Cir. 2007). In *Stop & Shop*, "each party to the arbitration agreement had selected an arbitrator, which the other party then refused to recognize as legitimate under the parties' arbitration agreement." *See id.* at 11. The dispute revolved around whether one party gave the adequate notice of appointment required by the parties' arbitration agreement, and the Second Circuit affirmed the district court's intervention "to correct the breakdown in the selection process." *See id.*

On the other hand, Bibby cites *Adam Technologies International S.A. de C.V. v. Sutherland Global Services., Inc.*, 729 F.3d 443 (5th Cir. 2013), as requiring the Court to refer this issue to the arbitration panel. In *Adam Technologies*, defendant Sutherland demanded arbitration with respect to a dispute with plaintiff Adam, to be administered by the International Centre for Dispute Resolution ("ICDR"). *See id.* at 444-45. Pursuant to their agreement, both Sutherland and Adam appointed arbitrators who would then appoint a third arbitrator, but pursuant to its rules the ICDR disqualified Adam's arbitrator and then appointed a replacement after Adam failed to do so despite having "received two extensions of the deadline to appoint." *Id.* at 445. The arbitrators selected by Sutherland and by the ICDR then selected the third arbitrator, and a hearing date was set. *Id.*

Adam sought relief in district court, requesting reinstatement of its disqualified arbitrator and re-selection of a third arbitrator. *See id.* at 447. The district court denied that request and the Fifth Circuit affirmed. First, the Fifth Circuit found no "lapse in time in the naming of the arbitrator or . . . other mechanical breakdown in the arbitrator selection process" that might warrant judicial intervention. *See id.* at 451 (citing *BP Exploration*, 689 F.3d at 491-92). The court found no "mechanical breakdown" because Adam was at fault for failing to timely appoint its arbitrator, and

no "lapse" because an arbitration panel had in fact been empaneled by the ICDR, "an appointment which the ICDR determined was in accordance with its rules." *See id.* Second, the Fifth Circuit declined to construe Adam's arguments as seeking enforcement of the contractual "method of naming or appointing an arbitrator." *Id.* at 452. Rather, the Fifth Circuit held that the ICDR's disqualification of Adam's arbitrator and appointment of a replacement was consistent with and pursuant to the arbitration agreement because the parties had incorporated the ICDR's rules by reference. *See id.*[25]

The Court finds that *Adam Technologies* is not directly analogous to this matter. Here, there is no disinterested third party that has appointed a second arbitrator pursuant to its interpretation of its own rules as agreed to by the parties. Rather, the second arbitrator has been appointed unilaterally by Bibby, an interested party to the dispute, pursuant to Bibby's interpretation of the parties' agreement. For the Court to find that there is no "lapse" or "mechanical breakdown" because an arbitration panel is already in place in this case, the Court would necessarily have to find that Bibby legitimately appointed the second arbitrator, which is the crux of Bordelon's motion.[26]

---

[25]The Fifth Circuit also stated in *Adam Technologies* that by "contesting the process used to select the arbitrators, Adam has advanced a challenge that essentially goes to the procedure of arbitration," and "[t]he law presumes that 'procedural questions' are for an arbitrator to decide." *Id.* at 452 (internal quotation marks and alterations omitted) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). As the Supreme Court explained in *Howsam*, the line between "procedural questions" and "questions of arbitrability" depends on whether "the contracting parties would likely have expected a court to have decided the gateway matter." *See* 537 U.S. at 83-84. As examples of "procedural questions," *Howsam* cite "defense[s] to arbitrability" such as waiver, delay, "whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration." *See id.* at 84. The present circumstance, in which Bordelon does not dispute arbitrability but does dispute Bibby's unilateral appointment of a second arbitrator pursuant to Bibby's interpretation of the parties agreements, is not obviously analogous to the kinds of "procedural questions" referred to in *Howsam*, as cited in *Adam Technologies*.

[26]The Court does not find the other cases cited by Bibby to be apposite. In *Gulf Guarantee Life Insurance Co. v. Connecticut General Life Insurance Co.*, the Fifth Circuit rejected (1) an

9

The Court finds that *Stop & Shop* is more analogous to this matter. As in that case, there appears to have been a "breakdown in the [contractual] selection process" because both Bordelon and Bibby claim to have appointed the second arbitrator pursuant to conflicting interpretations of the terms of their arbitration agreement and each "refuse[s] to recognize as legitimate" the other's appointment. *See Stop & Shop*, 246 F. App'x at 11; *see also BP Exploration*, 689 F.3d at 492.[27] Accordingly, in light of the foregoing, the Court finds that it may intervene pursuant to 9 U.S.C. § 4 and decide Bordelon's motion.

**2.)    Section 10 of the SMA Rules Allows Bibby to Appoint an Arbitrator**

Next, the parties dispute the interpretation of their arbitration agreement and whether that agreement *ever* allows Bibby to select the second arbitrator. For the following reasons, the Court finds that Bibby offers the only reasonable interpretation of the arbitration agreement, which agreement allows Bibby to appoint both the first and the second arbitrator under certain circumstances.

When interpreting a contract governed by maritime law,[28] "a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract

---

attempt to recover monetary damages based on an alleged violation of the arbitrator selection process, and (2) a challenge to a selected arbitrator's qualifications, neither of which are implicated by Bordelon's motion. *See* 304 F.3d 476, 488, 489-90 (5th Cir. 2002). None of the other cases cited by Bibby involved challenges to the legitimacy of a party's purported exercise of a contractual right to select an arbitrator.

[27]In the alternative, the Court also appears to have jurisdiction to intervene with respect to this issue because, as set forth below, Bordelon argues that "the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method." *BP Exploration*, 689 F.3d at 491.

[28]The charters themselves dictate that maritime law or, in the alternative, Texas law, applies. Neither party has cited Texas law, or indeed any law whatsoever, regarding the interpretation of the charters and the SMA Rules. Accordingly, the Court looks to maritime law pursuant to the plain language of the charters.

10

provision is ambiguous." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981). "A contract is unambiguous if 'its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation.'" *Channette v. Neches Gulf Marine, Inc.*, 440 F. App'x 258, 260 (5th Cir. 2011) (quoting *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004)). "Where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." *Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel*, 304 F. App'x 278, 282 (5th Cir. 2008). "A basic principle in admiralty law is to interpret, to the extent possible, all terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading*, 393 F.3d at 555.

Up to a point, the method for selecting arbitrators agreed to by the parties is clear and undisputed. First, it is clear that the parties have an enforceable arbitration agreement. Their contract states that any dispute "arising out of or in connection with" the charters is subject to mandatory arbitration by three persons, "one to be appointed by each of the parties hereto, and the third by the two so chosen."

Second, it is clear that the SMA Rules are part of the parties' arbitration agreement. Both charters state that "[t]he proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc." The SMA Rules state that when the parties "have agreed to arbitration under the Rules of the" SMA, the Rules are "binding on the parties and constitute an integral part of that agreement."[29] The parties have expressly made the SMA Rules part of their agreement, and the Court must therefore construe the charters and the SMA Rules together. *Cargill*, 304 F. App'x

---

[29]R. Doc. No. 12-5, at 1.

11

at 282.

Third, it is clear that in the event of a conflict between the charters and the SMA Rules with respect to the "method by which Arbitrators are to be appointed," the charters trump the SMA Rules.[30] Fourth, it is clear that Clause 34 of the charters does not dictate a time frame for appointing arbitrators. Fifth, it is clear that the SMA Rules state that "[i]f no such time frame [for appointing arbitrators] is specified [in the charter], the party demanding the arbitration shall give the other written notice that the appointment of its Arbitrator is made pursuant to Section 10 of these Rules which requires the other to appoint an arbitrator within twenty days of receipt of that notice, failing which the party demanding arbitration may appoint a second Arbitrator with the same force and effect as if that second Arbitrator were appointed by the other party." Accordingly, the crux of this matter is the interaction of Clause 34 and Section 10 of the SMA Rules with respect to appointing arbitrators.

Bordelon perceives a conflict between these provisions: Section 10 cannot allow Bibby to select two arbitrators because if it did so, that would conflict with Clause 34 which states that "one [arbitrator is] to be appointed by each of the parties hereto." Because the SMA Rules state that the charters prevail in the event of a conflict, Bordelon contends that Section 10 of the SMA Rules cannot allow Bibby to appoint the second arbitrator.

Bibby responds that there is no conflict. According to Bibby, Clause 34 of the charters is silent regarding the timeline for selecting arbitrators as well as the consequences that would occur if the party responding to the arbitration demand fails to appoint an arbitrator. In its reading, Section

---

[30]The charter agreements "specif[y] a method by which Arbitrators are to be appointed;" therefore, pursuant to Section 10 of the SMA Rules, "that method shall be followed and ***in the event of a conflict***, its terms shall prevail over" Section 10. R. Doc. No. 12-5, at 5 (emphasis added).

12

10 of the SMA Rules expressly fills that gap and therefore supplements, rather than conflicts with, Clause 34.

The Court must "interpret, to the extent possible, all terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading*, 393 F.3d at 555. Furthermore, the Court must construe Clause 34 and Section 10 together. *Cargill*, 304 F. App'x at 282. Considering those principles, as well as the plain language of Clause 34 and Section 10, the Court concludes that Bibby offers the only reasonable interpretation of the parties' agreement. Pursuant to Clause 34, Bordelon has a right to appoint an arbitrator; pursuant to Section 10 of the SMA Rules, if Bordelon does not appoint an arbitrator within 20 days of receipt of satisfactory notice from Bibby, then Bibby is contractually authorized to appoint the second arbitrator. There is simply no conflict between the provisions. Accepting Bordelon's absolutist reading of Clause 34 would nullify Section 10 and render it meaningless and superfluous. *See Chembulk*, 393 F.3d at 555. Accordingly, Bordelon's proposed interpretation of the parties' arbitration agreement is unpersuasive.

### 3.) Bibby Complied With the Arbitration Agreement

Having concluded that the arbitration agreement allows Bibby under certain circumstances to appoint the second arbitrator, the Court next turns to whether Bibby did so in compliance with the terms of the arbitration agreement. For the following reasons, the Court finds that Bibby gave adequate notice to Bordelon and that, following Bordelon's failure to timely appoint an arbitrator, Bibby was contractually authorized to appoint the second arbitrator as permitted by the arbitration agreement. Accordingly, the second appointment was valid and the arbitration panel as it exists was selected in compliance with the terms of the parties' agreement.

Bibby gave the requisite notice on February 5, 2016. Those emails to Bordelon's counsel

demanded arbitration, named Bibby's arbitrator, and "call[ed] upon Bordelon to appoint an arbitrator in accordance with the terms of the Charter *and the SMA Rules*."[31] When Bordelon did not appoint its own arbitrator within 20 days, pursuant to the plain language of the contract Bibby became contractually entitled to appoint the arbitrator for Bordelon. Bordelon's arguments to the contrary are unpersuasive.

Bordelon contends that the February 5, 2016 emails were insufficient notice that Bibby would appoint the second arbitrator if Bordelon did not appoint one within 20 days. Notwithstanding the fact that the emails (1) demanded arbitration, (2) appointed an arbitrator, (3) "call[ed] upon" Bordelon to appoint its own arbitrator, and (4) invoked the SMA Rules, Bordelon complains that the notice was insufficient because the emails did not specifically identify *Section 10* of the SMA Rules. Bordelon's argument exalts a technicality over substance and the Court is not persuaded. Bordelon offers no remotely plausible explanation of what being "call[ed] upon to appoint an arbitrator in accordance with . . . the SMA Rules" could mean other than the fact that Section 10 of the SMA Rules was being invoked. Moreover, as Bibby points out, Bordelon was warned at least three times to appoint an arbitrator: on February 5, 2016, February 25, 2016, and March 10, 2016. Bordelon, as a party to the arbitration agreement incorporating the SMA Rules, could not have been surprised that Bibby would invoke those Rules.[32]

In short, Bibby acted well within its unambiguous contractual rights when it demanded arbitration, demanded that Bordelon appoint a second arbitrator, and then appointed that second

---

[31]R. Doc. No. 12-6, at 1-4 (emphasis added).
[32]Bordelon also relies on *In re Pearland Navigation Company, Ltd.*, No. 96-6407, 1996 WL 650897 (S.D.N.Y. Nov. 8, 1996). *Pearland* is unpublished, not binding on this Court, and not particularly persuasive; that decision cites no case law and merely reflected a "suggestion" which that court found to be "fair and equitable" on the specific facts presented. *See id.* at *1.

arbitrator after Bordelon failed to do so within the 20 days required by the SMA Rules.[33]

## B.   Bibby's Cross-Motion Regarding Arbitrability

In response to Bordelon's motion, Bibby filed a cross-motion requesting an order "confirming the arbitrability of Bordelon's claims and compelling Bordelon to arbitrate them before the duly constituted Tribunal in these matters."[34] In response, Bordelon "continues to believe this Court should compel the method of arbitration between the parties," but contends that the Court should not "make any rulings beyond that."[35] Bordelon's motion raises three distinct issues: (1) whether the Court or the arbitration panel decides what claims are arbitrable, (2) whether Bordelon's claims are arbitrable, and (3) whether arbitration should be compelled.

### 1.)   The Court Decides Arbitrability

The threshold question is whether the Court can decide whether Bordelon's claims are arbitrable, or whether the arbitrability of the claims is itself a question for the arbitrators. The answer to this question is "fairly simple": the arbitrators should decide arbitrability if that is the parties' agreement. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). But the Court

---

[33]Alternatively, for the reasons set forth in Bibby's sur-reply memorandum, R. Doc. No. 26, it is beyond dispute that Bibby sent the February 25, 2016 email "remind[ing] Bordelon that its arbitrator appointment must be made in each matter by February 25, 2016 in accordance with Section 10 of the SMA Rules, failing which Bibby shall make the appointment on Bordelon's behalf." R. Doc. No. 14-1, at 80. Bordelon takes the position that such email was trapped in a spam filter, but cites no apposite cases in the context of an arbitration suggesting that Bordelon did not receive notice simply because Bordelon's counsel failed to read the email.

[34]R. Doc. No. 15-1, at 1.

[35]R. Doc. No. 18, at 1. Bordelon also argues that Bibby's motion is "procedurally defective" because Bibby did not simultaneously request that the Court re-open the case or lift the stay. R. Doc. No. 18, at 1-2. The Court is not persuaded. Bordelon cites no law whatsoever that might prohibit the Court from reaching the issues raised in Bibby's motions. Furthermore, having itself sought judicial intervention, Bordelon is in no position to complain that Bibby has also requested that the Court resolve any additional impediments to arbitration.

"should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* at 944 (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)) (alterations omitted). When the parties' arbitration agreement is silent as to who decides whether a claim is arbitrable, the presumption is that the Court should make that determination. *See id.* at 944-45; *accord AT&T Techs.*, 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

*First Options of Chicago* and *AT&T Technologies* are clear and have been followed repeatedly by the Fifth Circuit. *See, e.g.*, *General Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 247 (5th Cir. 1998) (holding that whether a particular dispute falls within the scope of an arbitration agreement "is a question of contract interpretation for the courts, unless the parties have clearly and unmistakably agreed that even that issue shall be submitted to binding arbitration"); *see also Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014) ("Parties may agree to arbitrate whether a particular claim is subject to arbitration so long as they clearly and unmistakably do so in their agreement."); *Agere Sys. Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 339 (5th Cir. 2009) ("In other words, even the issue of arbitrability may be submitted to binding arbitration if there has been a clear demonstration that the parties contemplated it.") (internal quotation marks and alteration omitted).

Clause 34 and the SMA Rules do not address who should decide arbitrability. Therefore, there is no "clear and unmistakable evidence" of the kind that the Fifth Circuit has found sufficient to demonstrate an agreement to arbitrate arbitrability. *See Agere*, 560 F.3d at 340 (agreement stated that "[t]he arbitrator . . . shall determine issues of arbitrability"); *Petrofac, Inc. v. DynMcDermott*

16

*Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (agreement stated that "[T]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (agreement stated that "[a]ny dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)").

Bordelon cites *In re Hornbeck Offshore (1984) Corp.*, in which the Fifth Circuit stated that "[t]his circuit distinguishes between broad and narrow arbitration clauses. If the clause is broad, the action should be stayed *and the arbitrators permitted to decide whether the dispute falls within the clause.*" 981 F.2d 752, 754 (5th Cir. 1993) (emphasis added); *see also Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 286 (5th Cir. 2007) (quoting *Hornbeck* for the same proposition).[36] But the Court does not find *Hornbeck* to be reliable authority for the proposition that a "broad" arbitration clause defining the nature of disputes that are subject to arbitration,[37] by itself, constitutes "clear and unmistakable evidence" that the parties have agreed to arbitrate the separate question of arbitrability.

In *Pennzoil*, the Fifth Circuit emphasized that "the question of whether a party can be compelled to arbitrate, as well as the question of what issues a party can be compelled to arbitrate, is an issue for the court rather than the arbitrator to decide." 139 F.3d 1061, 1066 (5th Cir. 1998).

---

[36]Somewhat bafflingly, Bibby also cites *Hornbeck* for the same proposition in its memorandum in support of its cross-motion, despite arguing that *the Court* should decide arbitrability. R. Doc. No. 15-1, at 12-13. By the time Bibby filed its reply brief, however, it reached the same conclusion as the Court and distinguished *Hornbeck* as "directly contrary to binding Supreme Court precedent." R. Doc. No. 25, at 4.

[37]"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). As will be explained below, the parties agree that the arbitration clauses in their agreements are broad.

The Fifth Circuit emphasized that this proposition is "abundantly clear" and it proceeded to review the arbitrability of the claims in that case, notwithstanding the fact that the arbitration agreement contained a "broad" arbitration clause. *See id.* at 1066, 1067. Significantly, the court in *Pennzoil* noted the evident inconsistency between *AT&T Technologies* (and necessarily, *First Options of Chicago*) and *Hornbeck*, although it declined to delve further into that conflict. *See id.* at 1066 n.7.

The Court also notes and agrees with Judge Engelhardt's analysis in *LLOG Exploration Offshore, LLC v. Newfield Exploration Company* that *Hornbeck* incorrectly applies the general presumption in favor of arbitration to the separate question of whether parties have agreed to arbitrate arbitrability. *See* 15-1746, 2016 WL 98618, at * 4-6 (E.D. La. Jan. 8, 2016). Accordingly, the Court declines to rely on *Hornbeck* for the proposition that a broad arbitration clause, by itself, is evidence of an agreement to arbitrate arbitrability. On that point, *Hornbeck* is irreconcilable with *First Options of Chicago* and the vast weight of Fifth Circuit authority. Because Bordelon and Bibby's agreement is silent regarding arbitrability, the Court must decide the arbitrability of Bordelon's claims. *See First Options of Chicago*, 514 U.S. at 944-45.

### 2.)    **Bordelon's Claims Are Arbitrable**

Bordelon and Bibby agree that Clause 34, by requiring arbitration of "any dispute arising out of *or in connection with*" the charters, contains a broad arbitration clause.[38] *See Pennzoil*, 139 F.3d at 1067. Broad arbitration clauses "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* Having reviewed Bordelon's opposition to Bibby's motion, the Court can locate no cogent argument that the disputes with respect to either the

---

[38]R. Doc. No. 15-1, at 4; R. Doc. No. 18, at 3.

M/V SHELIA BORDELON or the M/V BRANDON BORDELON do not have a "significant relationship" to the charters for the respective vessels. Considering that any doubts regarding arbitrability of particular claims should be resolved "in favor of arbitration," *see Pennzoil*, 139 F.3d at 1067,[39] the Court finds that the claims asserted in Bordelon's removed petition fall within the scope of the broad arbitration clauses in each charter.

### 3.) Bibby's Motion to Compel Arbitration Should Be Granted

Finally, Bibby requests that the Court compel Bordelon to proceed through arbitration. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. By refusing to recognize the properly appointed arbitration panel, Bordelon has refused to arbitrate in the manner provided for in the parties' agreements. Accordingly, an order compelling arbitration is warranted.

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Bordelon's motion is **DENIED**.

**IT IS FURTHER ORDERED** that Bibby's motion is **GRANTED**, that the claims raised in Bordelon's state-court petition are subject to arbitration, and that arbitration is compelled.

New Orleans, Louisiana, July 7, 2016.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[39] To clarify, the Court applies a presumption *in favor* of arbitration when deciding "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement," but it also applies a presumption *against* finding that the parties have agreed to arbitrate arbitrability. *See First Options of Chicago*, 514 U.S. at 944-45 (internal quotation marks omitted).